**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JEFFREY NICHOLS,

    Plaintiff,

        v.

ILLINOIS STATE POLICE OFFICER
C. MARTINEZ ID # 5162,

    Defendants.

No. 22-cv-04689

Judge John F. Kness

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jeffrey Nichols ("Nichols") brings this action alleging that Defendant, Illinois State Police Sergeant Chad Martinez, violated his Fourth, Fifth, and Fourteenth Amendment rights during a traffic stop. Defendant Sergeant Chad Martinez ("Sgt. Martinez") moves for summary judgment, arguing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. For the reasons that follow, Defendant's motion for summary judgment is granted.

## I. BACKGROUND

On the night of April 16, 2021, Defendant Sgt. Martinez pulled over the rental vehicle being driven by Plaintiff Nichols on Interstate 80. (Dkt. 25 ¶ 8.) Sgt. Martinez testified in a deposition that the vehicle being driven by Nichols "appeared to be traveling faster than . . . the posted speed limit in the construction zone"; Sgt. Martinez verified via the radar installed in his patrol vehicle that the vehicle was

traveling at 75 miles per hour. (*Id.* ¶¶ 9–10.) Nichols disputes that he was speeding. (Dkt. 32 at 3–5.)

When Sgt. Martinez approached Nichols's vehicle, Sgt. Martinez asked Nichols for his driver's license, rental vehicle agreement, and asked about Nichols's reason for travel and the last time Nichols was involved in a traffic stop. (Dkt. 25 ¶ 11.) Sgt. Martinez then advised Nichols that Nichols had been driving over the speed limit in the construction zone. (*Id.* at 4.) Sgt. Martinez advised dispatch that Nichols was "super nervous." (*Id.* ¶ 14.) At Sgt. Martinez's request, Nichols exited the rental vehicle and sat in the passenger seat of the patrol vehicle while Sgt. Martinez checked Nichols's record. (*Id.* ¶ 15.) Nichols told Sgt. Martinez that the last time he had been involved in a traffic stop was twenty years earlier, and that his only other interactions with law enforcement had been in the 1980s when his driver's license was suspended after multiple traffic violations. (*Id.* ¶¶ 23–24.)

Sgt. Martinez ran an electronic check on Nichols's driver's license and the rental vehicle registration and learned that Nichols had a positive criminal history, including narcotics and weapons offenses as recent as 2014. (*Id.* ¶¶ 25–28.) Observing Nichols's criminal history and that his use of a rental car and travel on "one of the main corridors for narcotic trafficking" were indicative of possible criminal drug activity, Sgt. Martinez asked Nichols for consent to search the rental vehicle. (*Id.* ¶¶ 29–30.) Nichols refused. (*Id.* ¶ 31.) Sgt. Martinez, believing he had "more than enough reasonable, articulable suspicion" to believe that Nichols was "in possession of some form of contraband," temporarily detained Nichols to allow Sgt. Martinez's canine

partner, Lambo, to walk around and conduct a free-air exterior sniff of the rental vehicle. (*Id.* ¶ 32.) After receiving a "positive canine alert," Sgt. Martinez conducted a search of Nichols's person and the rental vehicle with the assistance of other ISP troopers but did not find any illegal drugs. (*Id.* ¶¶ 32–36; Dkt. 32 ¶ 34.)

After the search of the rental vehicle, Sgt. Martinez issued Nichols a regular citation for speeding. (Dkt. 25 ¶ 39.) The citation indicated that Nichols was driving 75 miles per hour, detected by radar, in a zone with a 55-mile-per-hour speed limit, in violation of 625 ILCS 5/11-601(b). (*Id.* ¶ 40.) The citation was later dismissed. (Dkt. 32 ¶ 40.) Sgt. Martinez documented the traffic stop involving Nichols and noted the following observations:

> Overly nervous, long travel for short stay, unemployed but renting $500 car and hotel, lied about prior drug and weapon history, off route, antacids in plain view, looked lived in, lack of eye contact, radar detector, lack of luggage or personal effects.

(Dkt. 25 ¶ 41.)

Nichols sued Sgt. Martinez under 42 U.S.C. § 1983 and alleges that Defendant's actions violated his constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (Dkt. 1 ¶ 3.) Namely, Nichols alleges (1) he was stopped without probable cause, (2) he was unlawfully detained and the traffic stop was unconstitutionally prolonged, and (3) that his vehicle was searched "without just cause." (*Id.* ¶¶ 7–16.) Nichols also purports to bring a discrimination claim under 42 U.S.C. § 1981. (*Id.* ¶ 13.)

## II.    STANDARD OF REVIEW

### A.    Summary Judgment

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c). Rule 56(c) of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## B.     Qualified Immunity

Qualified immunity shields public officials from liability "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted); *Lovett v. Herbert*, 907 F.3d 986, 992 (7th Cir. 2018). If either inquiry "is answered in the negative, the defendant official is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (cleaned up).

## III.     DISCUSSION

Sgt. Martinez has met his initial burden under Rule 56 by pointing to an absence of evidence supporting essential elements of Nichols's claims. The burden thus shifts to Nichols to produce evidence sufficient for a jury to find in his favor. As explained below, Nichols has not carried that burden for any of his three claims.

## A.     Local Rule 56.1

Under applicable local rules, the party moving for summary judgment must file and serve a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. R. 56.1(a)(3). If that occurs, the party opposing summary judgment must file and serve "a concise response to the movant's statement that shall

5

contain . . . a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. R. 56.1(b)(3)(B). Despite citing Local Rule 56.1 in its title, Plaintiff's "LR 56.1 (b) Statement of Genuine Issues of Material Fact" (Dkt. 32) fails to comply with the requirements of the Rule.

As the Seventh Circuit has explained, when a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the local rule, those facts are deemed admitted for purposes of the motion. *Curtis v. Costco Wholesale Corp.,* 807 F.3d 215, 218 (7th Cir. 2015) (citing *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009)). A nonmoving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the nonmoving party render the facts presented by the moving party as undisputed. *See id.* at 218–19 (citing *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 818 (7th Cir. 2004)).

Nichols's Rule 56.1(b) statement fails to directly admit or deny Sgt. Martinez's asserted facts. Nichols asserts his version of the facts but fails to comply with Local Rule 56.1, which requires a concise, paragraph-by-paragraph summary and response corresponding to each factual allegation. *See* N.D. Ill. R. 56.1(b)(3). But Nichols's submission fails to provide a "concise summary of the paragraph" to which any of its responses are directed. *See* (Dkt. 31); *see also* N.D. Ill. R. 56.1(b)(3)(A). In addition, Nichols exceeds the forty-paragraph limit without leave of court, *see* N.D. Ill. L.R. 56.1(b)(3)(C), and includes lengthy, argumentative, and conclusory statements, often

6

unsupported by specific references to the record. Nichols's failure to provide concise, direct, and factual responses violates both the letter and purpose of the Rule. *See* N.D. Ill. L.R. 56.1 (requiring "*concise* response[s]" to the moving party's statement, consisting of "*short* numbered paragraphs, of any additional facts. . . .") (emphasis added).

Rule 56.1 aims to present the court with a clear and concise statement of material facts that are central to any summary judgment determination. *Curtis,* 807 F.3d at 219. It is the parties' duty to clearly identify the material facts in dispute and to support or oppose those facts with specific citations to admissible evidence. *Id.* A party that denies a material fact must provide admissible evidence that supports that denial in a clear, concise, and obvious fashion so as to streamline the work of resolving summary judgment motions. *Id.* Nichols's responses to Sgt. Martinez's statement are far from clear, concise, and obvious and would require this Court to "wade through improper denials and legal argument in search of a genuinely disputed fact." *Id.* (citing *Bordelon v. Chicago Sch. Reform Bd.*, 233 F.3d 524, 528–29 (7th Cir. 2000)).

Whether to require strict compliance with Local Rule 56.1 is discretionary; the Court thus could admit the facts asserted in Defendant's Rule 56.1(a) statement as undisputed. *See Flint v. City of Belvidere*, 791 F.3d 764, 766–67 (7th Cir. 2015) (upholding district court's discretion to admit only those facts presented in accordance with Local Rule 56.1). But that step is unnecessary because, even setting aside Nichols's procedural flaws, the undisputed facts of this case show Sgt. Martinez is properly entitled to summary judgment.

### B.    Section 1983 Claims

#### 1.    *Probable Cause for Traffic Stop*

Nichols first claims that Sgt. Martinez deprived him of his constitutional rights by initiating the traffic stop without probable cause. (Dkt. 1 ¶ 7.) Any search or seizure must be reasonable within the meaning of the Fourth Amendment; reasonableness is measured in objective terms by examining the totality of circumstances at the time the search or seizure occurred. *United States v. Cole*, 21 F.4th 421, 427 (7th Cir. 2021). Traffic stops are seizures, and to be reasonable, a traffic stop must be justified at its inception and reasonably related in scope to the circumstances that led to the stop in the first place. *Id.* Because traffic stops are typically brief detentions (more akin to *Terry* stops than formal arrests), they require only reasonable suspicion of a traffic violation, not probable cause. *Id.* When an officer actually observes a traffic infraction, that observation supplies probable cause to stop the vehicle. *Id.; Whren v. United States*, 517 U.S. 806, 810 (1996). Whether an officer had a lawful basis to initiate the stop depends on whether the officer reasonably believed he had observed a traffic violation, not whether the motorist actually violated a statute. *Cole*, 21 F.4th at 428  (citing *United States v. Simon*, 937 F.3d 820, 829 (7th Cir. 2019) ("If an officer reasonably thinks he sees a driver commit a traffic infraction, that is a sufficient basis to pull him over without violating the Constitution.")).

Applying that standard here, Sgt. Martinez had a lawful basis to initiate the traffic stop. Sgt. Martinez testified that the vehicle being driven by Nichols appeared

8

to be traveling faster than the posted speed limit in the construction zone, and that he verified via the radar installed in his patrol vehicle that the vehicle was traveling at 75 miles per hour. (Dkt. 25 ¶¶ 9–10.) Although Nichols disputes that he was actually speeding, all that is required is that Sgt. Martinez *reasonably believed* Nichols had committed a traffic violation in violation of 625 ILCS 5/11-601(b) of the Illinois Vehicle Code, not whether Nichols was, in fact, speeding in a construction zone. *See Cole*, 21 F.4th at 428.

Because the deposition testimony and documentary evidence establish that Sgt. Martinez reasonably believed Nichols had violated Illinois traffic laws, Nichols cannot establish that the traffic stop at the outset was unlawful. *See Williams v. Brooks*, 809 F.3d 936, 943 (7th Cir. 2016) (affirming summary judgment where officer's unrebutted testimony that he observed traffic violation established probable cause for a traffic stop such that "[n]o reasonable jury could find that this was an unlawful stop.") That the ticket was later dismissed has no bearing on whether reasonable suspicion existed when Sgt. Martinez initiated the stop. *See United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000).

### 2. Duration of Detention

Nichols also alleges that he was unlawfully detained in Sgt. Martinez's patrol for approximately forty-five minutes during the stop, which Nichols suggests was unconstitutionally prolonged. Nichols insists that Sgt. Martinez had "completed his investigation of supposed traffic violations as soon as he stopped the Plaintiff." (Dkt. 1 ¶ 9.)

During a valid traffic stop, an officer may "legitimately ask [a driver] to step out of his car, even without any particularized suspicion," and may ask the driver "to sit in his patrol car. . . ." *United States v. Lewis*, 920 F.3d 483, 492 (7th Cir. 2019) (citations omitted). As the undisputed record reflects, Nichols exited the rental vehicle and sat in the passenger seat of the patrol vehicle while Sgt. Martinez checked Nichols's record.

Whether a traffic stop's duration was tolerable is determined by the stop's "mission." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). To comport with the requirements of the Fourth Amendment, a traffic stop must be justified at its inception and reasonable in scope related to its "mission": that is, to address the traffic violation that warranted the stop and attend to any related safety concerns. *Cole*, 21 F.4th at 427–29 (citing *Rodriguez*, 575 U.S. at 354).

Traffic-stop goals can include matters related to ensuring the safety of the motoring public. Such ordinary mission-related tasks include checking a driver's license, registration, proof of insurance, outstanding warrants, and deciding whether to issue a citation. *Id.* at 428–29. Officers may also, however, ask questions unrelated to the violation and even conduct a dog sniff if doing so does not prolong the traffic stop. *Id.* at 429; *Arizona v. Johnson*, 555 U.S. 323, 333 (2009); *Caballes*, 543 U.S. at 408 (dog sniff). A stop becomes unlawful only if the officer detours from these mission-related tasks in a way that prolongs the stop, unless the officer has reasonable suspicion of other criminal activity that could independently justify prolonging the

10

stop. *Rodriguez*, 575 U.S. at 354-55; *Cole*, 21 F.4th at 428; *United States v. Martin*, 422 F.3d 597, 602 (7th Cir. 2005).

Because they give context to the violation and relate to roadway safety, reasonable travel-plan questions ordinarily fall within the mission of a traffic stop. *Cole*, 21 F.4th at 430. When a driver gives confusing, evasive, or inconsistent explanations of travel, displays extreme nervousness, and presents observable circumstances consistent with possible drug trafficking, the officer may lawfully prolong the stop to conduct further investigation, including a dog sniff, because the extended detention is independently supported by reasonable suspicion of other crimes. *Id.* at 434–35.

Viewing the evidence in the light most favorable to Nichols, the totality of the circumstances known to Sgt. Martinez created reasonable suspicion that Nichols was engaged in criminal activity during the initial roadside stop and gave Sgt. Martinez a lawful basis to prolong the stop. *Id.* at 435; *see also United States v. Finke*, 85 F.3d 1275 (7th Cir. 1996) (reasonable suspicion of drug courier activity justified speedy, unintrusive criminal record inquiry after traffic stop, where inquiry revealed suspicious travel plans, rental vehicle, nervousness, and evasive answers.) As the uncontroverted record shows, Sgt. Martinez, fewer than five minutes into the stop, advised the radio dispatcher that Nichols was "super nervous." (Dkt. 25 ¶ 14.) Nervousness is a factor that can support reasonable suspicion. *See United States v. Rodriguez-Escalera*, 884 F.3d 661, 669 (7th Cir. 2018).

Sgt. Martinez also related what appeared to be suspicious travel plans. Among

11

other concerns noted by Sgt. Martinez: (1) Nichols planned a long trip for a short stay, was unemployed, yet was able to rent a $ 500 car and stay at a hotel; (2) Nichols was travelling off-route, (3) antacids were within plain view; (4) the car looked lived in; and (5) there was a visible lack of luggage or personal effects in the car. (Dkt. 25 ¶ 41); *see Finke*, 85 F.3d 1275. Sgt. Martinez also observed that Nichols's use of a rental car and travel "on one of the main corridors for narcotic trafficking" were indicative of possible criminal drug activity. (Dkt. 25 ¶ 19.)

Based on these observations, particularly Nichols's misrepresentation of his criminal history of narcotics and weapons offenses, Sgt. Martinez had a reasonable suspicion that Nichols was engaged in possible criminal activity. That reasonable suspicion provided an independent justification for prolonging the stop to conduct a dog sniff and reasonable investigation. *Cole*, 21 F.4th at 435 (because officer developed reasonable suspicion fewer than nine minutes into the stop, he had a lawful basis for prolonging the stop to conduct a dog sniff); *see also Buchanan v. Kelly*, 592 F. App'x 503, 506 (7th Cir. 2014) (information suggesting possible criminal activity that an officer lawfully discovers during a valid traffic stop can justify lengthening the stop in order to conduct a reasonable investigation) (citing *United States v. Figueroa–Espana*, 511 F.3d 696, 702 (7th Cir. 2007); *Martin*, 422 F.3d at 602.)[1]

Because the initial part of the detention was valid, Sgt. Martinez could lawfully

---

[1] Plaintiff contends that *Buchanan* is a nonprecedential disposition and therefore not authoritative. (Dkt. 31 at 11–12.) True enough—but even though *Buchanan* is not a binding precedent, it can be considered as persuasive authority. In any event, *Buchanan* cites other binding Seventh Circuit opinions which this Court relies, such as *Figueroa-Espana* and *Martin*.

extend it to deploy a dog to sniff for drugs, especially because the dog was already on the scene, only minimal delay was involved, and the circumstances of Nichols's behavior and criminal history suggested possible drug trafficking. *United States v. Simon,* 937 F.3d 820, 831–33 (7th Cir. 2019) (officers did not unlawfully prolong a valid traffic stop where they ran a criminal-history check revealing previous drug and weapon charges, observed the defendant's abnormal nervousness, and conducted a K-9 sniff). It appears that approximately twenty minutes elapsed between the records check and the time at which Sgt. Martinez temporarily detained Nichols to conduct the canine sniff. (Dkt. 25 ¶¶ 15, 30–35.)[2] That delay was not unreasonably long.

Based on the totality of the circumstances, Nichols cannot establish that he was unreasonably detained at any stage of his encounter with Sgt. Martinez or that his detention was unreasonably prolonged.

### 3. The Search of the Rental Vehicle Was Reasonable

For similar reasons, Nichols cannot establish that the search of his vehicle was unreasonable. At each stage of Sgt. Martinez's investigation, the additional information obtained justified additional investigation, and once his canine partner alerted to the presence of narcotic odor during the free-air sniff of Nichols's vehicle,

---

[2] Even if there was some delay between the records check (the results of which gave Sgt. Martinez additional reason to suspect drug activity) and the canine sniff, the delay did not violate clearly established law of which Sgt. Martinez reasonably should have been aware. *Zorn v. Linton*, No. 25–297, 2026 WL 795469, at *2 (U.S. Mar. 23, 2026) ("To find that a right is clearly established, courts generally 'need to identify a case where an officer acting under similar circumstances . . . was held to have violated' the Constitution."). As a result, even if Sgt. Martinez's actions did violate the Fourth Amendment, he is entitled to qualified immunity. *Buchanan*, 592 F. App'x at 506–07 (thirty-minute delay between record check and start of canine sniff not a clearly unreasonable delay) (citing *Martin*, 422 F.3d at 602 (twenty-minute delay between stop and canine search permissible)).

Sgt. Martinez had probable cause to search the car. *See Martin*, 422 F.3d at 602 (free air sniff by drug detection canine provided probable cause for search); *see also United States v. Rogers*, 387 F.3d 925, 934 (7th Cir. 2004) (reasonable suspicion elevated to probable cause once drug detecting canine alerted). That Nichols did not consent to the search is immaterial, because a dog sniff of a vehicle is not a search under the Fourth Amendment, *Caballes*, 543 U.S. at 409, and the canine's alert provided probable cause to search the vehicle. *United States v. Loera*, 565 F.3d 406, 410 (7th Cir. 2009).

In support of his position that the search was unreasonable, Nichols argues that, because no narcotics or contraband were located, the vehicle search was improperly based on a false positive alert by Sgt. Martinez's canine partner, Lambo. (Dkt. 31 at 9–10.) Merely that the search did not uncover narcotics or contraband, however, does not mean that Lambo gave a false alert or that the resulting search was unconstitutional.

Courts judge a drug-sniffing canine's reliability ex ante, based on training and certification, not by what the search ultimately uncovers. *Florida v. Harris*, 568 U.S. 237, 247 (2013) (an alert from a properly trained and certified dog is presumptively reliable and provides probable cause, absent conflicting evidence); *United States v. Bentley*, 795 F.3d 630, 636 (7th Cir. 2015). Sgt. Martinez and Lambo were certified on the date of the traffic stop (Dkt. 25 ¶ 5), meaning that the Court can presume that Lambo's positive alert for the presence of narcotic odor provided Sgt. Martinez probable cause to search Plaintiff's vehicle. *Harris*, 568 U.S. at 247.  And there is no

14

reasonable question that, based on the video of the traffic stop, the documentary evidence, and Sgt. Martinez's testimony, Sgt. Martinez's canine partner alerted to the presence of narcotic odor at the tailgate of Nichols's vehicle. (Dkt. 25 ¶¶ 34–36.) Nichols offers no evidence to rebut any of this, other than speculative assertions and questions. Even if Nichols could dispute the reliability of the dog sniff, the totality of the circumstances support the search. *Bentley*, 795 F.3d at 635. Nichols therefore cannot establish that the search of his rental vehicle was unreasonable.

### C.     42 U.S.C. § 1981 and Equal Protection

Nichols's 42 U.S.C. § 1981 claim is both waived and fails as a matter of law. Nichols invokes Section 1981 in his Complaint seemingly to allege that he was subject to racial discrimination. (Dkt. 1 ¶¶ 3, 13.) But Section 1981 protects the equal rights of persons only to make and enforce contracts, *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006), and no contracts are at issue in this case. Moreover, even if Nichols intended to bring his claim under the Equal Protection Clause of the 14th Amendment, he was required to provide evidence that Sgt. Martinez was "motivated by a discriminatory purpose." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 303 (7th Cir. 2011) (citing *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001)).

Nichols asserts nothing more on his Section 1981 claim beyond that he is an African-American individual entitled to full and equal benefit of all laws and proceedings. (Dkt. 1 ¶ 13.) By failing to respond substantively to any of the arguments advanced by Sgt. Martinez on this issue, Nichols has waived his Section 1981 claim. *Citizens for Appropriate Rural Roads v. Foxx*, 815 F.3d 1068, 1078 (7th Cir. 2016)

15

(citing *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466–67 (7th Cir. 2010)). In any event, this seemingly abandoned claim of discrimination fails as a matter of law.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

SO ORDERED in No. 22-cv-04689.

Date: March 27, 2026

                                    JOHN F. KNESS
                                    United States District Judge